1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERESA ANN DOW,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | NO. C16-0369RSL<br><br>ORDER REVERSING AND<br>REMANDING FOR FURTHER<br>ADMINISTRATIVE<br>PROCEEDINGS |

Plaintiff Teresa Ann Dow appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which partially denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED.

I.   FACTS AND PROCEDURAL HISTORY

Plaintiff is a 58-year-old woman with a GED. Administrative Record ("AR") at 231, 235. Her past work experience was as a kitchen helper, housekeeper, routing clerk, school attendant, home attendant, and caregiver. AR at 67. Plaintiff was last gainfully employed in September of 2007. AR at 234.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

Plaintiff protectively filed an application for DIB on March 14, 2011. AR at 23. Plaintiff asserted that she was disabled due to diabetes, back pain, stomach pain, limited breathing, depression, and memory loss. AR at 234.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 23. Plaintiff requested a hearing, which took place on November 20, 2012. Id. On February 11, 2013, the ALJ issued a decision finding that plaintiff became disabled on August 24, 2012, but was not disabled prior to that date based on his finding that plaintiff could have performed specific jobs existing in significant numbers in the national economy. AR at 23-34. Plaintiff's request for review by the Appeals Council was denied on September 22, 2015 (AR at 4-9), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On March 15, 2016, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 2

Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

### III.   EVALUATING DISABILITY

As the claimant, Ms. Dow bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1520. The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner. Id. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e*., involves significant physical and/or mental activities, and gainful, *i.e*., performed for profit. 20 C.F.R. § 404.1572.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 3

medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. § 404.1520(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. § 404.1520(d). A claimant whose impairment meets or equals one of the listings for the required 12-month duration requirement is disabled. Id.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. § 404.1520(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); Tackett, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

### IV.   DECISION BELOW

On February 11, 2013, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

2. Since the alleged onset date, the claimant has had the following severe impairments: multiple abdominal wall hernias status post colon resection with ostomy, obesity, left upper extremity osteoarthritis and

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 4

        partial thickness tear of the supraspinatus tendon, and depression (20 C.F.R. § 404.1520(c)).

3. Since the alleged onset date, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. Since the alleged onset date, the claimant has had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can never push or pull with the left upper extremity, and she can never climb ladders, ropes, or scaffolds, or crawl. She can frequently climb ramps or stairs, balance, stoop, kneel, or crouch. She can never reach overhead with her left upper extremity but can occasionally reach laterally with her left upper extremity. She must avoid concentrated exposure to vibrations and hazards. She can perform simple routine tasks and can have occasional and superficial contact with the public.

5. Since the alleged onset date, the claimant has been unable to perform any past relevant work (20 C.F.R. § 404.1565).

6. Prior to August 24, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on August 24, 2012, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

7. Prior to August 24, 2012, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569 and 404.1569(a)).

8. The claimant was not disabled prior to August 24, 2012, but became disabled on that date and has continued to be disabled through the date of the decision (20 C.F.R. § 404.1520(g)).

AR at 26-34.

## V. ISSUES ON APPEAL

The issues on appeal are:

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 5

A.  Whether the ALJ erred in evaluating the medical evidence in the record.

B.  Whether the ALJ erred in evaluating plaintiff's credibility.

C.  Whether the ALJ erred in evaluating the lay witness testimony.

D.  Whether the ALJ erred in assessing plaintiff's RFC.

E.  Whether the ALJ erred in finding at step five that jobs existed in significant numbers that plaintiff could have performed.

Dkt. 11 at 1-2.

## VI.    DISCUSSION

### A.    Evaluation of Medical Opinions

Plaintiff argues that the ALJ erred in her analysis of the opinions of multiple medical professionals in the record. See Dkt. 10 at 4-12. The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 6

examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.

### 1. Examining Physician – Brian Allender, M.D.

Plaintiff argues that the ALJ erred by failing to assign weight to the opinion of examining physician Brian Allender, M.D. <u>See</u> Dkt. 11 at 6-7. However, while Dr. Allender diagnosed plaintiff with major depressive disorder related to a chronic pain condition and prescribed an antidepressant, he did not specifically opine to any functional limitations. <u>See</u> AR at 335-36. A plaintiff has the burden of establishing that an alleged error resulted in actual harm. <u>See</u> <u>Ludwig v. Astrue</u>, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights.") (citing <u>Shinseki v. Sanders</u>, 556 U.S. 396, 407-09 (2009)). Because Dr. Allender did not opine to any functional limitations, plaintiff does not establish that the RFC is insufficient in any way.[2] Therefore, plaintiff establishes no harmful error.

//

---

[2] Plaintiff notes that a therapist working as part of the same treatment team as Dr. Allender assessed a Global Assessment of Functioning ("GAF") score of 40, indicating major impairment in several areas of functioning. <u>See</u> Dkt. 11 at 6-7; AR at 355. However, a GAF score "is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment" and does not include specific workplace functional limitations. <u>See</u> <u>Vargas v. Lambert</u>, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). Therefore, while a GAF score may be "of considerable help" to the ALJ in assessing a claimant's RFC, "it is not essential" to the accuracy thereof. <u>Howard v. Comm'r, Soc. Sec. Admin.</u>, 276 F.3d 235, 241 (6th Cir. 2002). Accordingly, an ALJ's failure to reference or specifically account for a GAF score in assessing a claimant's RFC does not by itself make the RFC inaccurate. <u>See</u> <u>id.</u>

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 7

2. <u>Examining Physician – Jesse McClelland, M.D.</u>

Plaintiff argues that the ALJ improperly evaluated the opinion of examining physician Jesse McClelland, M.D. <u>See</u> Dkt. 11 at 7-9. The Court agrees.

Dr. McClelland examined plaintiff on July 5, 2011, and opined that she would be able to perform simple tasks but not for long periods of time, would have difficulty accepting instructions from supervisors, would struggle to maintain regular attendance, would have difficulty completing a normal workday or workweek without interruptions from her symptoms, and would struggle to deal with usual workplace stressors. <u>See</u> AR at 360-65. The ALJ gave this opinion little weight for several reasons, none of which are specific, legitimate, and supported by substantial evidence. <u>See</u> AR at 31.

First, the ALJ stated that Dr. McClelland's opinion was inconsistent with his own objective findings. <u>See id.</u> The ALJ noted that plaintiff's mental status examination ("MSE") showed good fund of knowledge, ability to perform simple calculations, intact remote memory, fair judgment and insight, and goal-directed thought process. <u>See id.</u> However, Dr. McClelland noted these results as well and accordingly opined that plaintiff could perform work activities on a consistent basis without special or additional instruction because she had adequate intelligence. <u>See</u> AR at 364. The only cognitive limitation to which Dr. McClelland opined was that plaintiff would struggle with complex and detailed tasks. <u>See id.</u> The ALJ accepted this part of the opinion, limiting plaintiff to simple, repetitive tasks in the RFC. <u>See</u> AR at 28. The remaining limitations to which Dr. McClelland opined were social limitations, which were not inconsistent with the MSE results. <u>See</u> AR at 362 ("[a]ffect is depressed and anxious"). Therefore, substantial evidence does not support the ALJ's rejection of the social limitations for being inconsistent with Dr. McClelland's own findings.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 8

1    Next, the ALJ stated that Dr. McClelland's opinion was inconsistent with "the objective

2    evidence in the record." See AR at 31. However, the ALJ fails to specifically identify any

3    piece of evidence in the rest of the record that is inconsistent with Dr. McClelland's opinion.

4    See id. It is insufficient for an ALJ to reject the opinion of a treating or examining physician by

5    merely stating, without more, that the objective record does not support that opinion. See

6    Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

7    The ALJ then states that "Dr. McClelland did not perform any additional testing to

8    support his opinion." AR at 31. It is unclear what additional testing the ALJ believed was

9    necessary. Dr. McClelland performed a clinical interview, made observations, reviewed

10   plaintiff's medical history, and performed an objective MSE. See AR at 360-65. An ALJ may

11   not reject the opinion of an examining psychologist or psychiatrist merely because there are no

12   formal psychological testing findings in his or her report. See Sprague v. Bowen, 812 F.2d

13   1226, 1232 (9th Cir. 1987) (opinion that is based on clinical observations supporting diagnosis

14   of depression is competent [psychiatric] evidence). Furthermore, performance of an MSE on its

15   own has been found to be a proper basis on which to base a medical diagnosis. See Clester v.

16   Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination

17   provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a

18   physical examination provide the basis for the diagnosis of a physical illness or injury.").

19   The ALJ also concludes that Dr. McClelland's opinion must have been based on

20   plaintiff's subjective complaints. See AR at 31. However, substantial evidence does not

21   support this finding, as Dr. McClelland performed an MSE, which is "termed the *objective*

22   portion of the patient evaluation" in the mental health field. Paula T. Trzepacz and Robert W.

23   Baker, The Psychiatric Mental Status Examination 4 (Oxford University Press 1993) (emphasis

24

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 9

in original). Furthermore, "[m]ental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms," so "[t]o allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders." Ferrando v. Comm'r, Soc. Sec. Admin., 449 Fed. Appx. 610 n.2 (9th Cir. 2011) (unpublished memorandum opinion).

Finally, the ALJ notes that plaintiff "barely mentioned her mental health impairments at the hearing," concluding that they must not be significant for that reason. See AR at 31. However, a person with mental health impairments may not even realize that her "condition reflects a potentially serious mental illness." See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Just as "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" (id.), it is equally questionable to dismiss a medical opinion of limitations stemming from mental impairments because the claimant did not have the insight to stress their severity at the hearing.[3] Therefore, the ALJ erred by failing to provide a specific and legitimate reason supported by substantial evidence for discounting Dr. McClelland's opinion.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." Id. The court also noted that the Ninth Circuit has "adhered to

---

[3] Moreover, the ALJ found plaintiff's subjective complaints at the hearing not to be credible (see AR at 30), so it is illogical that the ALJ would demand that plaintiff's discredited testimony support Dr. McClelland's opinion.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Id. (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" Id. at 1118 (quoting Shinseki, 556 U.S. at 407 (quoting 28 U.S.C. § 2111) (codification of the harmless error rule)).

Had the ALJ fully addressed the findings of Dr. McClelland, the RFC could have included additional limitations, as could the hypothetical questions posed to the vocational expert. As the ALJ's ultimate determination regarding disability was based on the testimony of the vocational expert on the basis of an improper hypothetical question, this error affected the ultimate disability determination and is not harmless.

### 3. Treating Physician – Kevin McKeighen, D.O.

Plaintiff argues that the ALJ improperly evaluated the opinion of treating physician Kevin McKeighen, D.O. See Dkt. 11 at 9-10. The Court agrees.

Dr. McKeighen provided several opinions regarding plaintiff's functional capacity over the course of their treatment relationship, the most recent of which was offered in June of 2010. See AR at 441. Dr. McKeighen opined that plaintiff was unable to lift more than 20 pounds, could not walk six hours in an eight-hour workday, would need unscheduled breaks throughout the day, and ultimately would miss more than four days of work per month due to her abdominal wall pain and other medical problems. See id. The ALJ gave this and all of Dr. McKeighen's opinions little weight for multiple reasons, none of which are specific, legitimate, and supported by substantial evidence.

1    First, the ALJ stated that Dr. McKeighen is not a vocational expert who can determine whether or not plaintiff is capable of work. See AR at 32. However, while Dr. McKeighen offered his ultimate opinion as to whether plaintiff was disabled, which is an issue reserved to the Commissioner, he also provided specific functional limitations for which the ALJ must provide reasons to discount. See Lester, 81 F.3d at 830-31.

Next, the ALJ found that the record did not contain any objective evidence consistent with Dr. McKeighen's opinion that plaintiff could not work. See AR at 32. However, the record is full of clinical findings over the course of Dr. McKeighen's extensive treatment relationship with plaintiff that support the functional limitations due to abdominal wall pain and back pain to which Dr. McKeighen opined. See, e.g., AR at 372 ("palpable tightness of the paraspinal muscles in the lumbosacral region"), 376 (back tightness and spasms, antalgic gait, "pain and stiffness with forward flexion and side bending"), 381 (limited range of motion in back, antalgic gait, palpable spasms), 384 (abdominal wall tenderness, "hernia appreciated lower left quadrant"), 397 ("diffusely tender on palpation consistent with ventral hernias").

The ALJ then concluded that Dr. McKeighen relied on plaintiff's subjective reports of pain rather than objective findings. See AR at 32. However, the ALJ points to no evidence of this alleged reliance. Again, Dr. McKeighen routinely performed physical examinations and recorded clinical findings. See, generally, AR at 370-401. Moreover, Dr. McKeighen stated that plaintiff had not exhibited any malingering behaviors in his opinion. See AR at 391. Substantial evidence does not support the ALJ's finding that Dr. McKeighen relied exclusively on unreliable subjective complaints from plaintiff rather than on objective medical evidence. Therefore, the ALJ erred by failing to provide a specific and legitimate reason supported by substantial evidence for discounting Dr. McKeighen's opinion.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS  - 12

4.	State Agency Physicians

Plaintiff argues that the ALJ erred by assigning great weight to state agency physician John Robinson, Ph.D., who assigned great weight to Dr. McClelland's opinion in his evaluation but left out part of Dr. McClelland's opinion in the RFC assessed. See Dkt. 11 at 10-12. Plaintiff argues that the same mistake was made by Cynthia Collingwood, Ph.D., and Robert Hoskins, M.D. See id. The ALJ gave these opinions great weight because they were consistent with the objective evidence. See AR at 32. However, as discussed above, the ALJ erred in his assessment of the medical evidence in the record. See supra, VII.A.2., 3. Therefore, the ALJ should re-evaluate the opinions of the state agency physicians on remand.

B.	Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ erred by discounting plaintiff's subjective complaints. See Dkt. 11 at 12-15. The Court agrees.

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen v. Heckler, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 13

determination invalid, as long as that determination is supported by substantial evidence. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

Here, the ALJ discounted plaintiff's subjective complaints because a "lack of treatment tends to suggest her impairments were not causing limitations as great as alleged." See AR at 30. However, the Ninth Circuit has held that it is improper to discount credibility on the basis of failure to pursue treatment when the claimant "has a good reason" for not doing so, such as lack of insurance coverage. See Carmickle, 533 F.3d at 1162. Plaintiff lacked insurance periodically during the relevant period of disability, as the ALJ himself acknowledged. See AR at 30. Plaintiff testified that her financial situation prevented her from obtaining all of the treatment she desired. See AR at 50-52. Therefore, it was not legitimate for the ALJ to discount plaintiff's testimony due to a lack of treatment when plaintiff provided a good reason.

The ALJ also found that plaintiff's daily activities were inconsistent with her subjective complaints. See AR at 30. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.

Here, the ALJ found that plaintiff's ability to lift boxes, clean, and go shopping was consistent with an ability to perform light work and inconsistent with plaintiff's more severe

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 14

complaints. See AR at 30. However, the parts of the record that the ALJ cites show that plaintiff, who was homeless at times, had to lift boxes as part of moving and experienced great pain as a result. See AR at 376, 378. Plaintiff also actually testified that her daughter does the majority of the cleaning and that she only cleans the toilets "once in a while." See AR at 61-62. Plaintiff stated that she cannot do the "big grocery shopping" but can get to the store for one or two items at a time. See AR at 62. Substantial evidence does not support the ALJ's conclusion that these activities were inconsistent with plaintiff's complaints and consistent with an ability to perform light work.

Finally, the ALJ's remaining reason for discounting plaintiff's testimony was that her "allegations are not entirely consistent with the medical evidence in the record." See AR at 29. However, an ALJ cannot reject a claimant's pain testimony solely on the basis of a lack of objective medical evidence in the record. See Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (once a claimant produces medical evidence of underlying impairment which is reasonably likely to cause some pain, ALJ may not discredit claimant's pain testimony solely because degree of pain alleged is not supported by objective medical evidence). The same is true with respect to a claimant's other subjective complaints. See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995). Because inconsistency with the medical evidence was the only remaining reason for discounting plaintiff's complaints, the ALJ has not provided a sufficiently specific and legitimate reason supported by substantial evidence for discounting plaintiff's testimony. The ALJ erred.

C.   Lay Witness Testimony

Plaintiff argues that the ALJ erred in evaluating the lay witness evidence in the record. See Dkt. 11 at 15-16. Lay testimony regarding a claimant's symptoms "is competent evidence

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 15

that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. <u>Id.</u> at 512. The ALJ also may "draw inferences logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.

Here, the ALJ gave all the lay witness statements in the record little weight because they were inconsistent with the medical evidence in the record. <u>See</u> AR at 31. However, as discussed above, the ALJ erred in his assessment of the medical evidence in the record. <u>See supra</u>, VII.A.2., 3. Therefore, the ALJ should re-evaluate the lay witness statements on remand.

### D. Plaintiff's RFC and the ALJ's Step-Five Findings

Because as discussed above the ALJ erred in assessing the medical evidence and plaintiff's testimony, the ALJ's RFC assessment does not necessarily completely and accurately describe all of plaintiff's capabilities. Likewise, the hypothetical question presented to the vocational expert may not have completely and accurately described all of plaintiff's capabilities. Therefore, the ALJ's step-five determination is not supported by substantial evidence and is in error.

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that

the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, issues still remain regarding conflicts in the evidence about plaintiff's functional capabilities and her ability to perform other jobs existing in significant numbers in the national economy despite any additional limitations. Accordingly, remand for further consideration is warranted in this matter.

## VII.   CONCLUSION

For the foregoing reasons, the Court finds that the ALJ erred in evaluating the medical evidence in the record and plaintiff's subjective complaints. The decision of the Commissioner is REVERSED and this matter is REMANDED for further proceedings not inconsistent with this Order.

Dated this 24th day of August, 2016.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 17